## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No. 8:26-cv-00525-DOC-ADS                           Date: March 19, 2026

Title: Taren Michal Lemke v. Target Corporation et al

PRESENT:                THE HONORABLE DAVID O. CARTER, JUDGE

|             Karlen Dubon             |             Not Present            |
|             Courtroom Clerk          |             Court Reporter         |

| ATTORNEYS PRESENT FOR | ATTORNEYS PRESENT FOR |
| PLAINTIFF: | DEFENDANT: |
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):   ORDER REMANDING CASE TO STATE COURT SUA SPONTE**

On the Court's own motion, the Court hereby **REMANDS** this case to the Superior Court of California, County of Orange.

## I. Background

Plaintiff Tarin Michal Lemke ("Plaintiff") filed this employment action against Defendant Target Corporation and Does 1–50 ("Defendants") in the Superior Court of California, County of Orange, asserting numerous state law causes of action arising from the termination of her employment. The Complaint alleges thirteen claims of action.[1] *See generally* Complaint ("Compl.") (Dkt. 1).

---

[1] These claims include: (1) Discrimination in Violation of the California Family Rights Act; (2) Failure to Grant Medical Leave in Violation of the California Family Rights Act; (3) Failure to Reinstate in Violation of the California Family Rights Act; (4) Denial of Medical Leave in Violation of the California Family Rights Act; (5) Restraint of Medical Leave in Violation of the California Family Rights Act; (6) Interference With Medical Leave in Violation of the California Family Rights Act; (7) Retaliation in Violation of the California Family Rights Act; (8) Disability Discrimination in Violation of the Fair Employment and Housing Act; (9) Failure to Provide Reasonable Accommodations in Violation of the Fair Employment and Housing Act; (10) Failure to Engage in a Good Faith Interactive Process in Violation of the Fair Employment and Housing Act; (11) Retaliation in Violation of the Fair Employment and Housing Act; (12) Failure to Prevent Discrimination and Retaliation in Violation of the Fair Employment and Housing Act; and (13) Wrongful Termination in Violation of Public Policy.

Plaintiff originally filed the Complaint on February 3, 2026, and Defendant was served on February 5, 2026. On March 6, 2026, Defendant filed a Notice of Removal invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). *Id.* Defendant claimed that complete diversity exists because Plaintiff is a citizen of California and Defendant is incorporated and maintains its principal place of business in Minnesota. Defendant further asserted that the amount in controversy exceeds $75,000 based on alleged lost wages, emotional distress damages, punitive damages, and attorneys' fees. *Id.*

## II. Legal Standard

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Removal of a case from state court to federal court is governed by 28 U.S.C. § 1441, which provides in relevant part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. This statute "is strictly construed *against* removal jurisdiction," and the party seeking removal "bears the burden of establishing federal jurisdiction." *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988) (emphasis added) (citations omitted).

Federal diversity jurisdiction requires that the parties be citizens of different states and that the amount in controversy exceed $75,000. 28 U.S.C. § 1332(a). For diversity jurisdiction purposes, a corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The presence of any single plaintiff from the same state as any single defendant destroys "complete diversity" and strips the federal courts of original jurisdiction over the matter. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005).

Generally, a removing defendant must prove by a preponderance of the evidence that the amount in controversy satisfies the jurisdictional threshold. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2008). If the complaint affirmatively alleges an amount in controversy greater than $75,000, the jurisdictional requirement is "presumptively satisfied." *Id.* In that situation, a plaintiff who then tries to defeat removal must prove to a "legal certainty" that a recovery of more than $75,000 is impossible. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *Crum v. Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000). This framework applies equally to situations where the complaint leaves the amount in controversy unclear or ambiguous. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996).

A removing defendant "may not meet [its] burden by simply reciting some 'magical incantation' to the effect that 'the matter in controversy exceeds the sum of [$75,000],' but instead, must set forth in the removal petition the underlying facts supporting its assertion that the amount in controversy exceeds [$75,000]." *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995) (quoting *Gaus*, 980 F.2d at 567). If the plaintiff has not clearly or unambiguously alleged $75,000 in its complaint or has affirmatively alleged an amount *less* than $75,000 in its complaint, the burden lies with the defendant to show by a preponderance of the evidence that the jurisdictional minimum is satisfied. *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010); *Guglielmino*, 506 F.3d at 699.

While the defendant must "set forth the *underlying facts* supporting its assertion that the amount in controversy exceeds the statutory minimum," the standard is not so taxing so as to require the defendant to "research, state, and *prove* the plaintiff's claims for damages." *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) (emphases added). In short, the defendant must show that it is "more likely than not" that the amount in controversy exceeds the statutory minimum. *Id*. Summary judgment-type evidence may be used to substantiate this showing. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090–91 (9th Cir. 2003); *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). For example, defendants may make mathematical calculations using reasonable averages of hourly, monthly, and annual incomes of comparable employees when assessing the amount in controversy in a wrongful termination suit. *Coleman*, 730 F. Supp. 2d. at 1148–49.

If the court lacks subject matter jurisdiction, any action it takes is ultra vires and void. *See Gonzalez v. Crosby*, 545 U.S. 524, 534 (2005); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 101–02 (1998). The lack of subject matter jurisdiction may be raised at any time by either the parties or the court. Fed. R. Civ. P. 12(h)(3). If subject matter jurisdiction is found to be lacking, the court must dismiss the action, *id.*, or remand pursuant to 28 U.S.C. § 1447(c). A court may raise the question of subject matter jurisdiction *sua sponte*. *See Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002).

## IV. Discussion

Defendant must show by a preponderance of the evidence that the jurisdictional minimum is satisfied. *See Geographic Expeditions, Inc.*, 599 F.3d at 1106-07; *Guglielmino*, 506 F.3d at 699. Defendant has not met its burden to show that the amount in controversy requirement is satisfied. Defendant asserts that the Complaint plausibly states an amount in controversy over $75,000 based on lost wages, emotional distress damages, punitive damages, and attorneys' fees. (Compl. at 12). The records show that Plaintiff's employment was terminated on August 13, 2025. *Id*. At the time of her separation, Plaintiff earned approximately $26.51 per hour and worked an average of 36.5 hours per week, resulting in earnings of approximately $967.62 per week, or

$4,193.02 per month. *Id.* Defendant's calculations assumed that lost wages should be projected through a speculative future trial date and further included potential front pay. *Id*. However, the Court declines to adopt such assumptions.

In determining the amount in controversy in the removal context, the Court considers the amount that was reasonably in dispute at the time of removal, not speculative future damages that may or may not be awarded. Defendants assert that by the time of trial, Plaintiff's lost wages will total $75,474.36. (Compl. at 13). However, when calculating the jurisdictional threshold, the Court considers lost wages in the period from termination until removal. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018) (noting that "the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court *may grant* on that complaint *if the plaintiff is victorious*")(emphasis added). Here, Plaintiff was terminated on August 13, 2025 and the case was removed on March 9, 2026. Assuming that Plaintiff earned around $4,193.02 per month, Plaintiff's past economic damages at the time of removal are around $29, 351. There is no indication that this amount is near the $75,000 minimum.

The Court's decision not to include speculative awards in the amount in controversy is reinforced by the fact that Congress has not raised the amount in controversy since 1996—nearly three decades ago.[2] *See* The Federal Courts Improvement Act of 1996, 110 Stat. 3850. Since then, the inflation rate is over 100% (*i.e.*, prices have more than doubled). Thus, adjusted for inflation, the amount in controversy should be over $150,000 today. Stated conversely, a case worth $75,000 in 1996 is worth less than $37,500 in today's dollars. Because inflation has plainly decreased the "real" value of the amount in controversy, more and more cases are able to meet the jurisdictional threshold and can be brought in federal court. As federal diversity jurisdiction expands, state court jurisdiction decides purely state law issues and develop state law correspondingly decreases. Thus, the federal jurisdictional creep is incompatible with the most basic principles of federalism.

Federalism is not the only loser in Congress's failure to increase the amount in controversy. When a case is improperly removed, as happened here, ultimate resolution is delayed. Moreover, if a court does not immediately remand a case sua sponte, a plaintiff may move to remand. Because cases subject to motion to remand are typically small dollar cases, this increased motion work can quickly cause attorneys' fees to outrun any potential recovery and places an immense burden on a plaintiff's lawyer working on contingency. In this respect, the current low jurisdictional threshold reduces access to justice. Therefore, the Court respectfully encourages Congress to reconsider the amount in controversy minimum.

---

[2] For reference, in 1996, the minimum wage was $4.75 per hour, and only 16% of Americans had cell phones. Indeed, the current amount-in-controversy is older than both of my law clerks.

**JS-6**

## V. Disposition

For the reasons set forth above, the Court hereby **REMANDS** this case to the Superior Court of Orange County.  May 4, 2026 hearing is VACATED.

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                          Initials of Deputy Clerk: kdu
CIVIL-GEN